IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| TASHA PEETE-JEFFRIES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 20-cv-2836-TLP-tmp |
| ) | |
| SHELBY COUNTY BOARD ) | |
| OF EDUCATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**REPORT AND RECOMMENDATION**

Before the court is defendant Shelby County Board of Education's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on March 26, 2021.[1] (ECF No. 13.) *Pro se* plaintiff Tasha Peete-Jeffries filed a response on April 6, 2021. (ECF No. 14.) For the reasons below, it is recommended that the motion be granted.

**I.   PROPOSED FINDINGS OF FACT**

For the past several years, plaintiff Tasha Peete-Jeffries has taught at various schools for defendant Shelby County Board of Education ("SCBE"). In her amended complaint, Peete-Jeffries lists a number of instances in which she alleges that she was harassed

---

[1] Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

and mistreated by employees of SCBE. According to the amended complaint, the harassment began in December of 2018 after she complained to human resources about her evaluation scores and mistreatment by the administration at Overton High School, where she was teaching at the time. (ECF No. 7 at 3.) She had been told that she would no longer be evaluated by administrators at the school. (ECF No. 7 at 3.) However, Peete-Jeffries alleges that shortly after she reported her mistreatment she began to be constantly observed by administrators. (ECF No. 7 at 3.) She also alleges she was not given support in disciplining students. (ECF No. 7 at 3.) A month later, in January of 2019, Peete-Jeffries overheard several teachers talking about her in a district-wide meeting and filmed their conversation. (ECF No. 7 at 3.) When she showed the footage to the school board, she was told "something would be done about it," but nothing ever was. (ECF No. 7 at 3.) Peete-Jeffries later filed a second complaint with the board and was told she would be administratively transferred to a different school. (ECF No. 7 at 3.)

Meanwhile, Peete-Jeffries alleges she continued to be evaluated by school administrators. (ECF No. 7 at 3.) One such evaluator was Assistant Principal Ronnie Dukes. (ECF No. 7 at 3.) Peete-Jeffries asked Dukes why he was evaluating her when she had been told the evaluations would stop. (ECF No. 7 at 3.) Dukes told her that he was unaware she could not be evaluated. (ECF No. 7 at

3.) Afterwards, Dukes and Principal Reginald Williams reported to the board that Peete-Jeffries refused to be evaluated. (ECF No. 7 at 3.) However, according to Peete-Jeffries, she (along with a union representative) urged the board to send someone to evaluate her, but the board never responded. (ECF No. 7 at 3.) Eventually, when someone sent by the board observed her teaching, the observation did not count as an evaluation in her personnel record. (ECF No. 7 at 3.) As a result, Peete-Jeffries's rating as a teacher dropped.[2] (ECF No. 7 at 3.)

According to the amended complaint, the "final straw" for Peete-Jeffries occurred when she told her students that they could not use cell phones in her class. (ECF No. 7 at 3.) She allegedly implemented this rule because a student had "put [her] on 'SnapChat.'" (ECF No. 7 at 3.) She confiscated the student's phone and sent him to the principal's office. (ECF No. 7 at 3.) The principal, however, returned the phone to the student. (ECF No. 7 at 3.) Peete-Jeffries confiscated another student's phone the next day, though this time she did not alert the principal because she "noticed a pattern of administrators not supporting [her]." (ECF No. 7 at 3.) When the school day ended, the student came to her room to recover his phone. (ECF No. 7 at 3.) Peete-Jeffries

---

[2]According to her response to the motion to dismiss, SCBE has Peete-Jeffries listed as a "novice" teacher who is required to be evaluated four times each year. (ECF No. 14.)

declined to return the phone and the student blocked the doorway so that she could not leave the room. (ECF No. 7 at 3.) She alleges that she called for other teachers to help her, but nobody came. (ECF No. 7 at 3.)

Peete-Jeffries scheduled a meeting for the next day with school administrators, a labor relations representative, and a union representative. (ECF No. 7 at 4.) During the meeting, Peete-Jeffries told the school she was "tired of being harassed" and that she "would rather die than . . . continue to work at the school." (ECF No. 7 at 4.) Peete-Jeffries told the school she needed the administrative transfer that she had been promised at the beginning of the school year. (ECF No. 7 at 4.) Afterwards, Peete-Jeffries was sent to the board's psychologist for an evaluation. (ECF No. 7 at 4.) The psychologist found that she was "paranoid and not fit for duty." (ECF No. 7 at 4.) As a result, she was forced to take off the remainder of the 2018-19 school year. (ECF No. 7 at 4.) Her initial attempts to be reinstated the following year were denied because of the psychologist's diagnosis. (ECF No. 7 at 4.) However, after she filed a charge with the Equal Employment Opportunity Commission ("EEOC"), she was given a placement at Southwind High School. (ECF No. 7 at 4.)

According to the amended complaint, the same mistreatment and harassment followed Peete-Jeffries to Southwind High School. (ECF No. 7 at 4.) By September, she was laid off and then transferred

to Sheffield High School. (ECF No. 7 at 4.) She was called into the principal's office on her first day at Sheffield High School because she "told another teacher that [she] didn't know how long [she] would be at the school." (ECF No. 7 at 4.) Later that day, she was stung by a wasp and suffered a severe allergic reaction. (ECF No. 7 at 4.) Because of the reaction, she was authorized leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.*, which caused her to miss a substantial portion of the school year. (ECF No. 7 at 4.) When she returned to the school later in the year, she was unable to climb stairs because of the alleged pain in her leg. (ECF No. 7 at 4.) Her doctor recommended that she be given intermittent leave as necessary. (ECF No. 7 at 4.) However, the elevators malfunctioned every time she tried to use them. (ECF No. 7 at 4.) According to the amended complaint, "somebody was turning off the elevator." (ECF No. 7 at 4.) Peete-Jeffries alleges she was required to take off work until her intermittent FMLA leave was exhausted, though she was reinstated at a new school after she contacted the Department of Labor and Wages to complain about being forced to take time off without pay. (ECF No. 7 at 4.)

At her new school (which is not named in the amended complaint), Peete-Jeffries alleges she was given a formal evaluation during her first week. (ECF No. 7 at 4.) She was not prepared to be evaluated because she "was teaching a new grade at

a new school with a different curriculum than [she] had previously taught." (ECF No. 7 at 4.) She also alleges she was harassed by a school board representative who questioned her about her knowledge of the disciplinary policy at the school despite only being a teacher there for a few weeks. (ECF No. 7 at 4.) She alleges she was effectively terminated in May of 2020 because she could not find a position for the next fall and that she was not given enough time to secure a position. (ECF No. 7 at 4.) She alleges all of the positions she applied for were deleted from the application system and that her account was deleted as well. (ECF No. 7 at 4.) She ultimately recreated her account and, in July, learned she had received a position at Cummings K8 for the upcoming school year. (ECF No. 7 at 5.) However, Cummings K8 did not have an elevator and thus was unable to accommodate her physical limitations.[3] (ECF No. 7 at 5.) Peete-Jeffries was evaluated on at least ten occasions at Cummings K8. (ECF No. 7 at 5.) According to the amended complaint, Peete-Jeffries asked one of the other teachers how many

---

[3]According to the amended complaint, Peete-Jeffries informed the teachers' union about her physical limitations after she accepted the Cummings K8 position. (ECF No. 7 at 5.) A representative from the union contacted the Cummings K8 human resources department regarding Peete-Jeffries's physical limitations and was told that her limitations would not be an issue because the school would be operating remotely. (ECF No. 7 at 5.) According to the amended complaint, the school's remote operations did not account for occasions when the technology at her home did not work properly and she needed to use the school's facilities. (ECF No. 7 at 5.)

times he had been evaluated, and he told her that he had been evaluated twice. (ECF No. 7 at 5.) She alleges she received no feedback from any of the evaluations despite teaching science for the first time in her career.[4] (ECF No. 7 at 5.) Her position with Cummings K8 was terminated in October and she was transferred to a new school in November. (ECF No. 7 at 5.) She alleges that she has followed SCBE's procedures to remedy her complaints since she "began having problems" but has had no success. (ECF No. 7 at 5.)

Peete-Jeffries received a right to sue letter from the EEOC on August 26, 2020, and filed her initial complaint with this court on November 16, 2020.[5] (ECF No. 1.) She filed an amended complaint on December 23, 2020. (ECF No. 7.) On January 27, 2021, the undersigned granted Peete-Jeffries leave to proceed *in forma pauperis*. (ECF No. 9.) The amended complaint states that it is predicated on 42 U.S.C. § 1983 and names SCBE as the only defendant. (ECF No. 7 at 2.) On March 26, 2021, SCBE filed the instant motion to dismiss, arguing that the amended complaint fails

---

[4] Peete-Jeffries states that she was certified as an English teacher. (ECF No. 7 at 5.)

[5] Peete-Jeffries attached thirty-eight exhibits, totaling 137 pages, to her initial complaint but did not attach these exhibits to her amended complaint. (See ECF No. 1-3.) These exhibits (and any factual allegations unique to the initial complaint) are not presently before the court because an amended complaint supersedes all prior complaints. See Drake v. City of Detroit, 266 F. App'x 444, 448 (6th Cir. 2008) (holding that an amended complaint renders all earlier complaints a nullity).

to state a claim upon which relief can be granted because she does not allege that SCBE deprived her of a right protected by federal law and that, in the alternative, she fails to establish an SCBE policy or custom sufficient to impose § 1983 liability on a municipality. (ECF No. 13-1.) Peete-Jeffries responded on March 31, 2021, arguing that the complaint should not be dismissed because SCBE has sufficient notice of her allegations and SCBE "seems to be notorious for harassing and retaliating against its employees." (ECF No. 14.) She also states in her response that she requested a motorized scooter and to work remotely for the 2020-2021 school year, and that both requests were denied. (ECF No. 14.)

## II.   PROPOSED CONCLUSIONS OF LAW

### A.   Standard of Review

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court views plaintiffs' allegations in the light most favorable to them and accepts all well-pleaded factual allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible,

i.e., more than merely possible." Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (quoting Iqbal, 556 U.S. at 677). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). To satisfy this requirement, plaintiffs must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." Id. (alteration omitted) (quoting Twombly, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); see also Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading.") (internal quotation marks omitted); cf. Pliler v. Ford, 542 U.S. 225, 231 (2004) ("District

judges have no obligation to act as counsel or paralegal to *pro se* litigants."); Young Bok Song v. Gipson, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

**B.   Section 1983 Liability**

SCBE's motion raises two arguments in favor of dismissal. First, SCBE argues Peete-Jeffries cannot assert a § 1983 claim because her amended complaint does not plausibly allege that she was deprived of a right secured under federal law. Second, in the event the court finds that Peete-Jeffries was deprived of a federal right, SCBE argues that it cannot be liable under § 1983 because Peete-Jeffries's amended complaint does not plausibly allege a policy or custom sufficient to establish municipal liability.

Section 1983 allows citizens to bring actions against any person who, acting under color of state law, subjects "any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws" of the United States.[6] 42 U.S.C. § 1983. It does not create substantive rights, but instead "provides remedies for deprivations of rights established elsewhere." Flint v. Ky. Dep't of Corr., 270 F.3d 340, 351 (6th Cir. 2001) (citing Okla. City v. Tuttle, 471 U.S. 808 (1985)). There are two essential elements to a claim under § 1983: "(1) the deprivation of a right secured by the Constitution or laws of the United States and (2) the deprivation was caused by a person acting under color of state law." Conexx Staffing Servs. v. PrideStaff, No. 2:17-cv-02350-SHM-cgc, 2017 WL 9477760, at *2 (W.D. Tenn. Nov. 3, 2017) (citing Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003)). As a result, a plaintiff must sufficiently plead that he or she was deprived of a right protected by the Constitution or another federal right in order to survive a motion to dismiss. See Meals v. City of Memphis, 493 F.3d 720, 727-28 (6th Cir. 2007) (noting that the first task for a court in considering the merits of a § 1983 claim "is to identify the specific constitutional or statutory rights allegedly infringed") (citing Graham v. Connor, 490 U.S. 386, 394 (1989)).

---

[6] A school district is a person for purposes of § 1983. Hicks v. Benton Cty. Bd. of Educ., 222 F. Supp. 3d 613, 623 (W.D. Tenn. 2016) (citing Ford v. Cty. of Grand Traverse, 535 F.3d 483, 495 (6th Cir. 2008) and Doe v. Claiborne Cty. by & through Claiborne Cty. Bd. of Educ., 103 F.3d 495, 505 (6th Cir. 1996)).

Peete-Jeffries does not identify any specific constitutional right in her amended complaint to support her claims for § 1983 liability. As SCBE points out in its motion, Peete-Jeffries's amended complaint lists a number of incidents that she alleges constitute workplace harassment, but does not describe how her constitutional rights were infringed upon. See Elliott v. Golston, No. 19-2767-TLP-tmp, 2020 WL 3023182, at *2 (W.D. Tenn. Feb. 18, 2020), report and recommendation adopted by, 2020 WL 1429769 (W.D. Tenn. Mar. 24, 2020) ("The complaint does not attribute any 'unconstitutional behavior' to [defendant], which is fatal to [plaintiff]'s claim against him."); Carter v. Truitt, No. 19-2642-MSN-tmp, 2019 WL 6194843, at *2 (W.D. Tenn. Nov. 4, 2019), report and recommendation adopted by, 2019 WL 6174348 (W.D. Tenn. Nov. 20, 2019) ("A plaintiff's 'failure to establish any violation of a federal right' is grounds to dismiss for failure to state a claim under § 1983.") (quoting Wiles v. Ascom Transp. Sys., 478 F. App'x 283, 285 (6th Cir. 2012)); Heilman v. Michigan, No. 14-cv-14747, 2015 WL 7179415, at *5 (E.D. Mich. Nov. 16, 2015) (holding that a plaintiff's § 1983 claims had no merit where she "[did] not plead the deprivation of any right secured by the Constitution" because "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States") (quoting West v. Atkins, 487 U.S. 42, 48 (1988)). Indeed, the only federal statute mentioned in the amended complaint

- 12 -

is the FMLA. The Sixth Circuit, however, has stated that the FMLA's remedial provisions preclude a plaintiff from bringing a § 1983 claim for statutory violations.[7] See Diaz v. Mich. Dep't of Corr., 703 F.3d 956, 96 (6th Cir. 2013) ("It is apparent from the plain language of the FMLA remedial provisions that Congress intended to exclude other remedies.") (relying on Rancho Palos Verdes v. Abrams, 544 U.S. 113 (2005), and Middlesex Cty. Sewage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1 (1981)). While claims for employment discrimination based on race, gender, or other classifications can be the basis for a § 1983 claim in certain limited circumstances, Peete-Jeffries's amended complaint neither pleads that any of her constitutional rights (such as equal protection or due process) were violated nor allows for the court to infer that any of her constitutionally protected rights were infringed upon. See Burlington v. Bedford Cty., 905 F.3d 467, 477-78 (6th Cir. 2018) (holding that a public employee "may assert an Equal Protection claim for disability discrimination under § 1983" against a state employer because "the rights created by the ADA

---

[7] Similarly, "Title VII and the ADA are independently actionable and have comprehensive remedial schemes. Violating them does not give rise to separate claims under § 1983." See Cole v. Tabor, 587 F. Supp. 2d 856, 863 (W.D. Tenn. 2008) (citing Day v. Wayne County Bd. of Auditors, 749 F.2d 1199, 1205 (6th Cir. 1984); Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002); Lollar v. Baker, 196 F.3d 603, 610 (5th Cir. 1999); Alsbrook v. City of Maumelle, 184 F.3d 999 (8th Cir. 1999) (en banc); and Holbrook v. City of Alpharetta, 112 F.3d 1522, 1531 (11th Cir. 1997)).

are strikingly different from those already protected by the Equal Protection Clause"); Toth v. City of Toledo, 480 F. App'x 827, 831 (6th Cir. 2012) ("[A]n employee may sue her public employer under both Title VII and § 1983 when the § 1983 violation rests on a claim of infringement of rights guaranteed by the Constitution.") (quoting Day, 749 F.2d at 1205); Evans v. Memphis Light, Gas, & Water Div., No. 06-2037, 2007 WL 9710064, at *10 (W.D. Tenn. Dec. 20, 2007) (noting that "in the Sixth Circuit, an employee may sue her public employer under both Title VII and Section 1983 only when the Section 1983 violation rests on a claim of infringement of rights guaranteed by the Constitution" and applying the same reasoning to ADA/disability discrimination claims) (citing Grano v. Dep't of Development, 637 F.2d 1073 (6th Cir. 1980); Alsbrook, 184 F.3d at 1010; and Holsbrook, 112 F.3d at 1531). Without any factual allegations to plausibly allege a constitutional violation in support of her § 1983 claim, Peete-Jeffries's amended complaint must be dismissed.

Moreover, even if the court were to find that Peete-Jeffries's amended complaint adequately pleaded an underlying constitutional violation, the undersigned submits that the amended complaint fails to plausibly state a claim for § 1983 municipal liability. It is well settled that "[a] school district can be liable under § 1983 if its own policies or customs infringed upon the 'rights, privileges, or immunities secured by the Constitution and laws' of

the United States." Beard v. Whitmore Lake Sch. Dist., 244 F. App'x 607, 610 (6th Cir. 2007) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)). Peete-Jeffries's amended complaint does not identify any policy or custom that allegedly caused her injuries. See Bickerstaff v. Lucarelli, 830 F.3d 388, 402 (6th Cir. 2016) (holding that a plaintiff could not state a claim for § 1983 municipal liability where the plaintiff "point[ed] to no facts that would indicate the existence of such an official policy or custom" and did not "put forth any facts suggesting that the City ignored a 'clear and persistent pattern' of misconduct") (quoting Thomas v. City of Chattanooga, 398 F.3d 426, 433 (6th Cir. 2005)); Lovelace v. City of Memphis Police Dep't, No. 08-2776, 2010 WL 711190, at *3 (W.D. Tenn. Feb. 24, 2010) (even under a liberal *pro se* pleading standard, "[the] Plaintiff bears the burden of explaining with minimal, but sufficient, facts exactly what policy or custom caused his injury") (citing Twombly, 550 U.S. at 570). This deficiency in the amended complaint is a basis for dismissal as well.

### III. RECOMMENDATION

For the reasons above, it is recommended that SCBE's Motion to Dismiss be granted.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

<u>May 6, 2021</u>
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**